## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | |
|---|---|
| April Ayer<br>317 Gruen Dr.<br>Springfield, OH 45505 | Case No. 3:18-cv-00327 |
|        Plaintiff, | Judge: |
|     vs. | Magistrate Judge: |
| Community Mercy Health Partners, d/b/a<br>Springfield Regional Medical Center<br>100 Medical Center Drive<br>Springfield, Ohio 45504 | **VERIFIED COMPLAINT** |
| and | **JURY DEMAND ENDORSED<br>HEREIN** |
| Mercy Health, d/b/a Bon Secours Mercy<br>Health<br>C/O Michael A. Bezney, Statutory Agent<br>1701 Mercy Health Place<br>Cincinnati, Ohio 45237 | |
| and | |
| Bon Secours Mercy Health, Inc.<br>C/O Christine Morris, Statutory Agent<br>1505 Marriottsville Road<br>Marriottsville, MD 21104 | |
|       Defendants. | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of

the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability

and to provide appropriate relief to Plaintiff, April Ayer, who was affected by such practices. The

Plaintiff alleges that Community Mercy Health Partners, doing business as Springfield Regional

Medical Center, Mercy Health, doing business as Bon Secours Mercy Health, and Bon Scours Mercy Health, Inc. failed to accommodate Ms. Ayer's disabilities, gait abnormality, congenital nystagmus, amblyopia in both eyes, lymphedema, and diminished cognitive capability, and terminated her employment because of her disability, age, and gender.

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1964 ("Title VII"), Ohio Revised Code §4112.02(A), and a state claim for wrongful termination in violation of public policy.

2. Jurisdiction is proper in the United States District Court for the Southern District of Ohio-Western Division at Dayton and this Court has jurisdiction over the Defendants pursuant to 28 U.S.C. §1331.

3. Venue is proper in the United States District Court for the Southern District of Ohio-Western Division at Dayton as the unlawful employment practices were committed within the jurisdiction of the Court.

## PARTIES

4. Plaintiff, April Ayer, age 44, is a citizen of Ohio and resident of Clark County, residing at 317 Gruen Dr. Springfield, OH 45505.

5. Defendant, Community Mercy Health Partners, is a non-profit corporation organized in the State of Ohio, Entity No. 387539, and at all relevant times, has been doing business as Springfield Regional Medical Center within the State of Ohio and has had at least 15 employees.

6. Defendant, Mercy Health is a non-profit corporation organized in the State of Ohio, Entity No. 660695, and at all relevant times, has been doing business as doing business as Bon Secours Mercy Health within the State of Ohio and has had at least 15 employees.

7. Defendant, Bon Secours Mercy Health, Inc, is a corporation organized in the State of Maryland, Department ID Number D01581479, and at all relevant times, has been doing business as a healthcare entity within the State of Ohio and has had at least 15 employees.

8. At all relevant times, Defendants have been employers engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

9. At all relevant times, Defendants have been a covered entity under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

## FACTS

10. Plaintiff, April Ayer is a functioning disabled adult who suffers from gait abnormality, gross and fine motor skill impairment, congenital nystagmus, amblyopia in both eyes, and lymphedema.

11. Due to her disability, Plaintiff is unable to drive and relies on her parents for transportation and support.

12. Notwithstanding her disability, Plaintiff has remained constantly employed since she graduated high school in 1992.

13. Plaintiff began her career with the Defendant, then Community Hospital in June 1993, over twenty-five (25) years ago.

14. Plaintiff's primary job responsibility at Community Hospital was nutritional services which required her to use a dishwasher to clean dishes and to take food trays to patient rooms.

15. The required working hours for this position was 07:00AM to 03:00PM.

16. In 2004, Community Hospital merged with Mercy Medical Center forming the Springfield Regional Medical Center.

17. In 2011, Plaintiff's job changed, and she worked as a nourishment attendant which required her to take care of the coffee and drink areas on patient floors.

18. Between late 2012 and early 2013, the Defendant made several consolidations and job cuts and Plaintiff's position was eliminated.

19. As a result, Defendant moved Plaintiff's position, without her request or consent, to the role of a porter in mid-2013 which required initially for her to clean by hand pots, pans, baking dishes, etc., as well as moping the kitchen and taking the trash to the compactor.

20. Upon information and belief, Defendant has a history of intentionally placing disabled individuals, without their request or consent, in a position Defendant knows or should know that the disabled individual is unable to perform and is either forced to resign or be fired as a result.

21. Soon after being placed in that position, Plaintiff first noticed that something was irritating her skin and a rash developed as a result.

22. Plaintiff reported her skin issue and was seen by Occupational Health on three different occasions between 2013 and 2015.

23. Soon after Plaintiff was forced into this role, Defendant combined two jobs into one and added additional required tasks that made Plaintiff's job more time extensive, i.e. visually sweeping the 1st and 2nd floor and various wings and floors for trash and food trays.

24. Plaintiff was told initially that the position would require her to work an occasional night shift; however, within a short period of time, the night shift became her permanent shift.

25. The hours she was required to work was between 1:00PM and 09:00PM; however, due to her disability and the time needed to complete the required tasks, there would be nights she would not leave until 2:00AM or 3:00AM.

26. These hours became very difficult to work because the Plaintiff relied on another person for transportation.

27. Additionally, in 2014, Plaintiff began receiving "write-ups" or "corrective action plans" due to the extensive overtime Plaintiff was forced to work in order to fully complete her required job tasks.

28. Further, it was difficult for the Plaintiff to take out the trash due to the weight of the trash being over forty (40) pounds, on average.

29. Plaintiff alerted her Supervisor and agent of Defendant, Don Taylor, and her Lead Supervisor and agent of Defendant, Mike Moore, about the issues she faced, and their response was "Ken can do that job or Lonnie can do that job, why can't you" or "if you want another position you have to master this one."

30. Even after this incident, Plaintiff repeatedly raised issues with her supervisors and HR management, but was continually told "if you want another position you have to master this one."

31. In June 2015, Plaintiff applied for another position at the hospital, similar to the position she was in previously, on three separate occasions.

32. Plaintiff was told by Defendant she was ineligible for the position due to the "write-ups" and "corrective action plans" she received in 2014.

33. Defendant told Plaintiff that if she was having difficulty with her position as porter they would need a letter of accommodation in Plaintiff's personnel file.

34. In July 2015, Plaintiff was referred by her doctor, Marvin Narcelles, for physical therapy due to the extensive medical issues Plaintiff was suffering from as a result of the job position.

35. The physical therapist, Sue Creager, PT, recommended, and it was approved by Plaintiff's doctor, that Plaintiff was to be restricted to "lifting 1 to 15lbs throughout the day from knee height to waist or mid chest height. She can lift 20lbs occasionally and at 30lbs she struggles."

36. Ms. Crager further opined that "the two work areas that are the most logical [for Plaintiff] would be passing trays and the dish room. She has worked these positions and can do this work in a timely manner."

37. After the information was submitted to Defendant, they issued a letter on October 30, 2015 informing Plaintiff that they were aware of the job restrictions issued by her doctor and that "we believe you can perform the essential duties of you [sic] position within the submitted restrictions." "Mercy Health can offer you the work practice of changing trash bags more frequently to decrease the weight of the trash. It is recommended if you feel the trash is above your lifting ability that you request assistance from your manager or team lead". *Exhibit A*.

38. Unfortunately, this did not solve the true problem Plaintiff was facing, which was the long and unnecessary hours she had to work in order to complete all of the required tasks.

39. As such, Plaintiff, in 2016, began receiving additional "write-ups" and "corrective action plans" for overtime.

40. On or around August 29, 2016, Plaintiff submitted a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant for the discrimination she received as a result of her disability.

41. On or around October 02, 2017, Plaintiff received notice from EEOC they were dismissing her charge and issued her a right to sue letter.

42. Shortly after Plaintiff received that letter, Plaintiff again applied on a number of occasions for a similar position she had previously worked; however, she was never accepted for the position even though she was qualified, and the position would have been a reasonable accommodation for her disability.

43. On or around November 10, 2017, Plaintiff again noticed the rash and skin irritation on her hands and arm and notified Eric Watson, Supervisor.

44. Plaintiff notified her supervisor and the claim was submitted to the Bureau of Workers' Compensation (BWC).

45. It was discovered Plaintiff was allergic to the cleaning agent in the soap that is used for cleaning dishes.

46. From November 21, 2017 to March 29, 2018, Plaintiff performed transitional work due to the rash and skin irritation and Defendant's accommodation during that time was for the Plaintiff to wear gloves while washing the dishes.

47. Unfortunately, the gloves also caused a rash and skin irritation.

48. While on the restrictions from BWC, Plaintiff's physician submitted in December 2017 a second accommodation request assessment form. Plaintiff's physician stated that Plaintiff can perform all functions of the job, but at a slower rate than other individuals.

49. In April 2018, Plaintiff again applied on a number of occasions for a similar position she had previously worked; however, she was never accepted for the position even though she was qualified.

50. On or about May 29, 2018, Plaintiff was released to work, but with restrictions to have no contact with the sink or soap and to wear gloves during her shift.

51. After she was released to work, Defendant's agent and supervisor with AVI, Jay Doe attempted to reintegrate her into the team and schedule her shifts but was told by HR to "mind his own business".

52. Defendant, through HR, informed Plaintiff that due to the prior restrictions, she cannot perform the essential functions of her current job.

53. Subsequently, Plaintiff sought legal counsel to assist her with the situation she was facing.

54. After hiring counsel, the Defendant requested on numerous occasions to meet privately with Plaintiff, without counsel, to discuss what options were available.

55. After much discussion between Plaintiff's counsel and Defendant, Defendant terminated Plaintiff's employment on or around July 20, 2018.

56. While in her over twenty-five (25) years of employment with the Defendant, Plaintiff missed less than 5 days of work.

57. Further, despite her disabilities, Plaintiff was able to adequately perform the duties expected of her in every position she worked in during her employment with Defendant.

58. Upon information and belief, Defendants have a history of discriminating employees on the basis of their disability, age, and/or gender.

59. That as a result of her unlawful termination, Plaintiff has suffered continuous and ongoing damages.

**FIRST CLAIM FOR RELIEF:**
**VIOLATION OF § 102(a) OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12111(a)**

60. Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs as if fully rewritten herein.

61. More than thirty days prior to the institution of this lawsuit, Plaintiff April Ayer filed a charge with the Equal Employment Opportunity Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

62. Plaintiff, April Ayer is a qualified individual with disabilities, gait abnormality, congenital nystagmus, amblyopia in both eyes, lymphedema, and diminished cognitive capability.

63. By engaging in the conduct set forth in the paragraphs above and by terminating the Plaintiff, Defendant, Community Mercy Health Partners, d/b/a Springfield Regional Medical Center, since July 20, 2018, engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her disabilities in violation of Section 102(A) of the Americans With Disabilities Act Of 1990, 42 U.S.C. §12111(A).

64. Defendants, Mercy Health and Bon Secours Mercy Health, Inc., knew or should have known that a healthcare entity owned and managed by them engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her disabilities in

violation of Section 102(A) of the Americans With Disabilities Act Of 1990, 42 U.S.C. §12111(A).

65. The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunity under the law and otherwise adversely affected her employment based solely on her disabilities.

66. The unlawful employment practices complained of were intentional.

67. The unlawful employment practices complained of were done with malice or reckless indifference to state and federally protected rights of Plaintiff.

68. That as a direct and proximate result of Defendants' unlawful employment practices and unlawful termination of Plaintiff on the basis of disability, Plaintiff requests damages in an amount to be determined at trial, in excess of Twenty-Five Thousand Dollars ($25,000).

**SECOND CLAIM FOR RELIEF:**
**VIOLATION OF §§ 102(a) AND 102(b)(5)(A) OF THE AMERICANS WITH**
**DISABILITIES ACT OF 1990, 42 U.S.C. §§12111(a) AND 12111(b)(5)(A)**

69. Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs as if fully rewritten herein.

70. More than thirty days prior to the institution of this lawsuit, Plaintiff April Ayer filed a charge with the Equal Employment Opportunity Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

71. Plaintiff, April Ayer is a qualified individual with disabilities, gait abnormality, congenital nystagmus, amblyopia in both eyes, lymphedema, and diminished cognitive capability.

72. By engaging in the conduct set forth in the paragraphs above and by refusing to accommodate the Plaintiff or follow the accommodation requests by Plaintiff's doctor,

Defendant, Community Mercy Health Partners, d/b/a Springfield Regional Medical Center has, since July 20, 2018, engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her disabilities in violation of §§ 102(a) and 102(b)(5)(A) Of The Americans With Disabilities Act Of 1990, 42 U.S.C. §§12111(a) And 12111(b)(5)(A).

73. Defendants, Mercy Health and Bon Secours Mercy Health, Inc., knew or should have known that a healthcare entity owned and managed by them engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her disabilities in violation of §§ 102(a) and 102(b)(5)(A) Of The Americans With Disabilities Act Of 1990, 42 U.S.C. §§12111(a) And 12111(b)(5)(A).

74. The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunity under the law and otherwise adversely affected her employment based solely on her disabilities.

75. The unlawful employment practices complained of were intentional.

76. The unlawful employment practices complained of were done with malice or reckless indifference to state and federally protected rights of Plaintiff.

77. That as a direct and proximate result of Defendants' unlawful employment practices and unlawful termination of Plaintiff on the basis of disability, Plaintiff requests damages in an amount to be determined at trial, in excess of Twenty-Five Thousand Dollars ($25,000).

## THIRD CLAIM FOR RELIEF:
## VIOLATION OF §§ 102(a) AND 102(b)(5)(B) OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §§12111(a) AND 12111(b)(5)(B)

78. Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs as if fully rewritten herein.

79. More than thirty days prior to the institution of this lawsuit, Plaintiff April Ayer filed a charge with the Equal Employment Opportunity Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

80. Plaintiff, April Ayer is a qualified individual with disabilities, gait abnormality, congenital nystagmus, amblyopia in both eyes, lymphedema, and diminished cognitive capability.

81. By engaging in the conduct set forth in the paragraphs above and by denying Plaintiff employment opportunities on numerous occasions, Defendant, Community Mercy Health Partners, d/b/a Springfield Regional Medical Center has, since 2014, engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her disabilities in violation of §§ 102(a) and 102(b)(5)(B) Of The Americans With Disabilities Act Of 1990, 42 U.S.C. §§12111(a) And 12111(b)(5)(B).

82. Defendants, Mercy Health and Bon Secours Mercy Health, Inc., knew or should have known that a healthcare entity owned and managed by them engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her disabilities in violation of §§ 102(a) and 102(b)(5)(B) Of The Americans With Disabilities Act Of 1990, 42 U.S.C. §§12111(a) And 12111(b)(5)(B).

83. The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunity under the law and otherwise adversely affected her employment based solely on her disabilities.

84. The unlawful employment practices complained of were intentional.

85. The unlawful employment practices complained of were done with malice or reckless indifference to state and federally protected rights of Plaintiff.

86. That as a direct and proximate result of Defendants' unlawful employment practices and unlawful termination of Plaintiff on the basis of disability, Plaintiff requests damages in an amount to be determined at trial, in excess of Twenty-Five Thousand Dollars ($25,000).

## FOURTH CLAIM FOR RELIEF:
## VIOLATION OF ORC 4112.02(A)

87. Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs as if fully rewritten herein.

88. By engaging in the conduct set forth in the paragraphs above Plaintiff's employment was terminated without just cause and on the basis of her disability.

89. The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunity under the law and otherwise adversely affected his employment based solely on her disability.

90. The unlawful employment practices complained of were intentional.

91. The unlawful employment practices complained of were done with malice or reckless indifference to state and federally protected rights of Plaintiff.

92. That as a direct and proximate result of Defendants' unlawful employment practices and unlawful termination of Plaintiff on the basis of disability, Plaintiff requests damages in an amount to be determined at trial, in excess of Twenty-Five Thousand Dollars ($25,000).

## FIFTH CLAIM FOR RELIEF:
## VIOLATION OF ORC 4112.02(A)

93. Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs as if fully rewritten herein.

94. By engaging in the conduct set forth in the paragraphs above Plaintiff's employment was terminated without just cause and on the basis of her age.

95. The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunity under the law and otherwise adversely affected his employment based solely on her age.

96. The unlawful employment practices complained of were intentional.

97. The unlawful employment practices complained of were done with malice or reckless indifference to state and federally protected rights of Plaintiff.

98. That as a direct and proximate result of Defendants' unlawful employment practices and unlawful termination of Plaintiff on the basis of age, Plaintiff requests damages in an amount to be determined at trial, in excess of Twenty-Five Thousand Dollars ($25,000).

## FOURTH CLAIM FOR RELIEF:
## VIOLATION OF ORC 4112.02(A)

99. Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs as if fully rewritten herein.

100. By engaging in the conduct set forth in the paragraphs above Plaintiff's employment was terminated without just cause and on the basis of her gender.

101. The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunity under the law and otherwise adversely affected his employment based solely on her gender.

102. The unlawful employment practices complained of were intentional.

103. The unlawful employment practices complained of were done with malice or reckless indifference to state and federally protected rights of Plaintiff.

104. That as a direct and proximate result of Defendants' unlawful employment practices and unlawful termination of Plaintiff on the basis of her gender, Plaintiff requests damages in an amount to be determined at trial, in excess of Twenty-Five Thousand Dollars ($25,000).

## SEVENTH CLAIM FOR RELIEF:
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

105. Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs as if fully rewritten herein.

106. Clear public policy exists that discourages employees from terminating employees on the basis of their disability, gender, or age.

107. Plaintiff, April Ayer is a qualified individual with disabilities, gait abnormality, congenital nystagmus, amblyopia in both eyes, lymphedema, and diminished cognitive capability.

108. Plaintiff's wrongful termination jeopardizes public policy because Defendants' wrongfully terminated Plaintiff on the basis of her disabled status.

109. Defendants' lacked an overriding business justification because Plaintiff was able to adequately perform the tasks of the position and had requested several times for a reasonable accommodation.

110. The unlawful employment practices were intentional.

111. The unlawful employment practices complained of in the preceding paragraphs was done with malice or reckless indifference to the state and federally protected rights of April Ayer.

112. That as a direct and proximate result of Defendants' unlawful employment practices and unlawful termination of Plaintiff on the basis of her gender, Plaintiff requests damages in an amount to be determined at trial, in excess of Twenty-Five Thousand Dollars ($25,000).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, April Ayer, respectfully demands judgment against Defendants, Community Mercy Health Partners, doing business as Springfield Regional Medical Center,

Mercy Health, doing business as Bon Secours Mercy Health, and Bon Scours Mercy Health, Inc. for:

A. Appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices.

B. Compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

C. Punitive damages for its malicious and reckless conduct resulting from the unlawful employment practices described above, in amounts to be determined at trial.

D. Award pre-judgment and post-judgment interest at the statutory rate.

E. Award attorney's fees for this matter.

F. Award the Plaintiff the costs for this action.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by his complaint.

Respectfully submitted,

Bradley Jeckering (0092299)
Joel Sprout (0091677)
D. Luke Meenach (0096286)
Jeckering & Associates, LLC
16 S. Main Street
Mechanicsburg, Ohio 43044
P: 937-896-2222
F: 614-515-4905
brad@centralohiolegal.com

joel@centralohiolegal.com
luke@centralohiolegal.com
*Counsel for Plaintiff*

## VERIFICATION

**STATE OF OHIO**

            **SS:**

**COUNTY OF CLARK**

Now comes the affiant, April Ayer, first being duly sworn and cautioned, and hereby states she has read the foregoing complaint and the statements and averments contained therein and states she believes they are true and accurate to the best of her knowledge.

**AFFIANT FURTHER SAYETH NAUGHT.**

April Ayer
_____
April Ayer

Sworn to me and subscribed in my presence this 24th day of September, 2018.

_____
Notary Public



Bradley Jeckering, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.